Rosanne L. Mah (State Bar No. 242628)
Email: rmah@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

*Counsel for Plaintiff*

[*Additional Counsel listed on signature block.*]

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Carol Bryden-Moore, an individual, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |
| vs. | |
| NANOMETRICS, INC., BRUCE C. RHINE, PIERRE-YVES LESAICHERRE, EDWARD J. BROWN, JR., ROBERT DEUSTER, CHRISTOPHER A. SEAMS, TIMOTHY J. STULTZ, AND CHRISTINE A. TSINGOS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Carol Bryden-Moore ("Plaintiff"), by her undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Nanometrics, Inc., a Delaware corporation ("Nanometrics," or the "Company,") and Nanometrics' Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a). Specifically, Defendants solicit stockholder approval in connection with the proposed merger of the Company with Rudolph Technologies, Inc. ("Rudolph") a leading science and technology company, through a Registration statement filed with the U.S. Securities and Exchange Commission (the "SEC"), that omits material facts necessary to make the statements therein not false or misleading. Stockholders need this material information to decide whether to tender their shares or pursue their appraisal rights.

2.      On June 24, 2019, the Company announced that it had entered into a definitive agreement (the "Merger Agreement"), pursuant to which Nanometrics and Rudolph would combine in a merger of equals, whereby Rudolph stockholders will receive 0.8042 shares of Nanometrics common stock for each Rudolph share (the "Proposed Transaction"). Upon completion of the merger, current Nanometrics stockholders will own approximately 50% and current Rudolph stockholders will own approximately 50% of the combined company.

3.      In connection with the Proposed Transaction, on August 15, 2019, the Company filed a Preliminary Registration Statement on Form S-4 Registration Statement (the "Registration Statement") with the SEC.  The Registration Statement is materially deficient and misleading because, *inter alia*, it omits material information concerning the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Barclays Capital Inc., ("Barclays"). The omission of such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to cast a properly informed vote on the Proposed Transaction.

4.      For these reasons and as set forth in detail herein, Defendants have violated

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Sections 14(a) and 20(a) of the Exchange Act.  Judicial intervention is warranted here to prevent irreparable harm to the Company's stockholders.  Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Nanometrics maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

8.      Plaintiff, at all relevant times, is the owner of shares of Nanometrics common stock.

9.      Defendant Nanometrics is a leading provider of advanced, high-performance process control metrology and inspection solutions used primarily in the semiconductor manufacturing industry, as well as in the fabrication of other solid-state devices and components in the optoelectronic, LED and storage industries, and more recently in the industrial, aerospace and

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

scientific research markets. Nanometrics' principal executive offices are located at 1550 Buckeye Drive, Milpitas, California 95035.  Nanometrics' common stock is traded on the NASDAQ under the symbol "NANO."

10.     Defendant Bruce C. Rhine ("Rhine") has served as Nanometrics' Chairman of the Board of Directors since July 2007 and as a director since July 2006.

11.     Defendant Pierre-Yves Lesaicherre ("Lesaicherre") has served as Nanometrics as President, Chief Executive Officer and Director since November 2017.

12.     Defendant Edward J. Brown, Jr. ("Brown") has served as a director since February 2013.

13.     Defendant Christopher A. Seams ("Seams") has served as a director since August 2015.

14.     Defendant Timothy J. Stultz, Ph.D. ("Stultz") has served as a director of Nanometrics since August 2007.

15.     Defendant Christine A. Tsingos ("Tsingos") has served as a director since May 2014.

16.     Defendants Rhine, Lesaicherre, Brown, Seams, Stultz, and Tsingos are collectively referred to herein as the "Board" or the "Individual Defendants."

**FURTHER SUBSTANTIVE ALLEGATIONS**

**The Process Leading to the Transaction**

17.     In Nanometrics and Rudolph have long eyed one-another as potential merger partners. In fact, beginning in 2017, Nanometrics and Rudolph engaged in discussions concerning a potential business combination between the two companies.

18.     While these talks were ultimately terminated, the two companies continued to interact in the ordinary course of business, and discussions concerning a potential merger reemerged intermittently throughout 2018.

19.     With both companies interested in a strategic transaction, in January 2019, Mr. Rhine contacted Michael P. Plisinki, chief executive officer of Rudolph, to suggest that if Rudolph were still interested in the possibility of renewing discussions, the parties should resume their

discussions.

20.     On January 28, 2019, Mr. Plisinski contacted Mr. Rhine by electronic mail, noting a recent merger of equals transaction announced in the semiconductor industry and indicating that, under the right circumstances, a merger of equals transaction between their two companies unlock stockholder value. Three days later, Plisinski and Rhine spoke by telephone on February 1, 2019 and discussed the potential benefits of merger of equals transactions generally and the potential strong fit between Rudolph and Nanometrics.

21.     This interest was shared with the Nanometrics' board of directors during regularly scheduled meetings on March 11 and 12, 2019, during which time the Nanometrics' board of directors expressed interest in a potential combination

22.     On March 20, 2019, Mr. Plisinski sent a proposed mutual confidentiality agreement, signed by Rudolph, to Mr. Rhine, in Mr. Rhine's role as the chairman of the Nanometrics' board of directors, in anticipation of commencing discussions concerning a possible merger of equals between the two companies and related due diligence. The confidentiality agreement was signed on behalf of Nanometrics and Mr. Rhine returned it to Mr. Plisinski on March 21, 2019.

23.     Shortly thereafter, on March 22, 2019, Nanometrics received an initial Rudolph term sheet that contemplated, among other things: (i) that the transaction would be structured as an all-stock merger of equals, with a wholly-owned subsidiary of Rudolph merging with and into Nanometrics, with Nanometrics surviving the merger as a wholly-owned subsidiary of Rudolph; (ii) economic terms to be negotiated; (iii) a governance structure that would include a declassified board of directors, with Nanometrics designating the chairman of the board of directors of the combined company, Rudolph designating a lead independent director if required, Rudolph designating the chief executive officer of the combined company, Nanometrics designating the chairs of each of the audit committee and compensation committee, and Rudolph designating the chairs of the nominating and governance committee and an ad-hoc integration committee; (iv) that the headquarters of the combined company would be in Wilmington, Massachusetts; (v) that the combined company's common stock would be listed on the NYSE; (vi) customary and reciprocal representations and warranties, covenants, closing conditions and termination rights in the definitive agreement; and (vii)

that Nanometrics and Rudolph would enter into mutually acceptable standstill and exclusivity arrangements.

24.     Following the receipt of the Randolph term sheet, the Nanometrics board of directors scheduled a Nanometrics board meeting to discuss the initial Rudolph term sheet and proposed merger of equals transaction for March 26, 2019. To assist in these discussions, the Board directed management to engage a financial advisor. Having already worked with Barclays during the previous attempted-merger between Randolph and Nanometrics, the Board directed management to engage Barclays as the Company's financial advisor.

25.     On March 22, 2019, Barclays provided a draft engagement letter to Nanometrics for the engagement of Barclays as Nanometrics' financial advisor in connection with a possible strategic transaction with Rudolph, which Nanometrics executed on March 26, 2019.

26.     During the March 26, 2019 meeting of the Nanometrics board of directors, the Board discussed the potential transaction, the relative changes in the financial positions and strategic outlooks of Nanometrics and Rudolph since the cessation of the 2017 discussions, and the economic, structural, strategic, diligence and other information and analyses that would need to be undertaken by Nanometrics and its representatives and reviewed with the Nanometrics board of directors before the Nanometrics board of directors could decide to proceed with any such potential transaction. Following this discussion, the Nanometrics board of directors considered that a merger of equals transaction could be beneficial to the Nanometrics stockholders and that the basic framework for such a transaction outlined in the term sheet could be workable.

27.     Throughout the month of April 2019, Nanometrics and Rudolph, and their respective advisors, engaged in preliminary due diligence, discussed potential timelines for the transaction, and each party began preliminary efforts to gather relevant materials and populate their respective electronic data rooms.

28.     On May 4, 2019, the Nanometrics board of directors held a telephonic meeting at which members of Nanometrics management, during which time the Nanometrics management reviewed Nanometrics' business highlights, growth strategy, and revenue growth roadmap, and presented Nanometrics' financial model, including forecasts extending for three years through

calendar year 2021. Following this presentation, the Nanometrics board of directors discussed with Nanometrics' management certain adjustments to the Nanometrics projections, and determined that, as so adjusted, the Nanometrics projections were the most current and predictive forecasts of the future financial performance of Nanometrics. Accordingly, the Nanometrics board of directors (i) authorized and directed Nanometrics management to share the Nanometrics projections, as so adjusted, with Rudolph, and (ii) approved Barclays' use of the Nanometrics projections for Barclays' financial analysis.

29.     Throughout the months of May and June 2019, Nanometrics and Rudolph, and their respective advisors, engaged in preliminary due diligence and negotiate the terms of the merger agreement. Central to these negotiations was how the proposed that equity in the combined company would be allocated. Nanometrics ultimately agreed to a 51%-49% equity split and Nanometrics as the legal acquirer and that the name of the combined company could be "Nanometrics-Rudolph."

30.     With the terms of the proposed transaction finalized, on June 23, 2019, the Nanometrics board of directors held a telephonic meeting to consider the final terms of the proposed merger of equals transaction, including the merger agreement. During the meeting, Barclays presented to the Nanometrics board of directors the financial analyses of the exchange ratio of 0.8042 shares of Nanometrics common stock to be paid to Rudolph stockholders for each share of Rudolph common stock and delivered their fairness opinion, to the effect that from a financial point of view, the exchange ratio to be paid by Nanometrics in the merger was fair to Nanometrics. Following the presentation by Barclays, the Nanometrics board of directors unanimously determined that the merger, the merger agreement, and the other transactions contemplated thereby were advisable and in the best interests of Nanometrics and its stockholders, and authorized Nanometrics' management to execute the final merger agreement with Rudolph and finalize the related schedules and exhibits thereto.

31.     The following morning, on June 24, 2019, the parties issued a joint press release announcing the execution of the merger agreement.

**The Proposed Transaction**

32.     In a press release dated June 24, 2019, Nanometrics announced that it had entered

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

into a Merger Agreement with Rudolph.

33.   The press release states in pertinent part:

SAN MILPITAS, Calif. & WILMINGTON, Mass.--Nanometrics Incorporated (NASDAQ: NANO), a leading provider of advanced process control metrology and software analytics, and Rudolph Technologies, Inc. (NYSE: RTEC), a leading provider of semiconductor process control systems, lithography equipment, and software for wafer fabs and advanced packaging facilities, today announced that they have agreed to combine in an all-stock merger of equals transaction. The merged company will be a premier end-to-end metrology, inspection, process control software, and lithography equipment provider for the semiconductor industry and other advanced markets.

Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, Rudolph stockholders will receive 0.8042 shares of Nanometrics common stock for each Rudolph share. Upon completion of the merger, current Nanometrics stockholders will own approximately 50% and current Rudolph stockholders will own approximately 50% of the combined company.

Rudolph CEO Michael Plisinski will serve as Chief Executive Officer and Rudolph CFO Steven Roth will serve as Chief Financial Officer of the combined company, alongside a highly experienced leadership team comprised of executives from both companies. The Board of Directors will be led by Nanometrics director Christopher Seams and will have 12 directors, consisting of six from each existing Board. The combined company will be headquartered in Wilmington, Massachusetts and will maintain a strong presence at Nanometrics' headquarters in Milpitas, California.

Nanometrics President and Chief Executive Officer, Pierre-Yves Lesaicherre said, "Nanometrics has a long history of innovation in the field of optical metrology, pioneering the use of scatterometry for semiconductor process control. In recent years, we have established a strong position in optical critical dimension metrology, enabling the ramp of advanced technology nodes by each of the major semiconductor manufacturers worldwide. Our merger announced today with Rudolph marks the culmination of our respective businesses' growth, diversification, and increased scale. We believe the combined global support organizations, technology development teams and product portfolio will create a unique, end-to-end solution provider across the entire semiconductor fabrication process. The combined company will be able to provide improved device yield at reduced manufacturing cycle time, supporting the accelerated product life cycles in the semiconductor and other advanced markets."

Rudolph Chief Executive Officer, Michael Plisinski added, "This strategic transaction brings together two successful and complementary teams and product portfolios. Nanometrics' metrology portfolio is a strong strategic fit with Rudolph's current diversified product lines including software, inspection, metrology, and lithography. Our current set of products has already created integrated solutions for the advanced packaging market, and we expect to develop new integrated solutions for customers as we are able to draw from an even larger set of products in the future. Our customers are consolidating and rapidly innovating across the complete value chain

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

from front-end fabrication to packaging. Bringing these two successful and complementary teams together enables us to solve our customers' high-value problems in the years ahead. We look forward to joining forces to leverage our respective strengths and talented teams to benefit all stakeholders."

**Key Strategic and Financial Benefits**

The merger joins together two highly complementary, leading semiconductor inspection and metrology companies. Investors, customers, employees and all constituents are expected to benefit from:

- **Complementary Products:** Nanometrics and Rudolph have highly complementary portfolios. By bringing together front-end metrology with inspection solutions, the new company will have the opportunity to offer more comprehensive process control solutions to the world's leading semiconductor device manufacturers. These served markets are also complementary, as the combined product portfolio provides tools and software to customers producing advanced nodes and specialty devices in the front-end along with advanced packaging in the back-end. As customers continue to invest in more advanced process control solutions, the combined technology portfolio and established channels to these markets is expected to accelerate the ability to serve both front-end and back-end markets.

- **Increases Served Markets:** Each company currently has a semiconductor industry SAM of at least $1B, with additional SAM expansion opportunities of $400M to $500M per company. The combination is expected to expand the companies' served market opportunity to approximately $3B. With each company's capabilities in their respective served markets, the combination is expected to strengthen the combined team's opportunity to grow their share of the combined SAM and invest in future expansions.

- **Global Scale:** The combined company will have broader, global scale enabling it to better invest, compete, and provide innovative services to the customer base. The combined company will have worldwide locations and facilities across the U.S., China, Europe, Japan, South Korea, Singapore and Taiwan, including a strong combined team worldwide. Nanometrics and Rudolph had in the aggregate approximately $600 million in revenue and $118 million in operating income based on 2018 results. In addition, at the end of the first calendar quarter, the companies had in the aggregate cash and marketable securities totaling $319 million, working capital of $526 million and no debt.

- **Strong Cash Generation**: In 2017 and 2018 the companies generated a combined $223 million in cash flows from operating activities. The combination is expected to enhance the free cash flow generation of the combined enterprise, resulting in a stronger cash position to enable strategic capital deployment in order to further increase shareholder value.

- **Increased Shareholder Value:** The combined company is expected to drive long-term shareholder value through cost synergies and revenue growth opportunities. Annual cost synergies of at least $20 million are expected, primarily from elimination of duplicate public company costs, elimination of redundant facility leases, and other

general administration areas. The companies expect additional potential upside from revenue synergies through cross-selling and software modules.

## THE MATERIALLY MISLEADING REGISTRATION STATEMENT PREVENTS STOCKHOLDERS FROM MAKING AN INFORMED DECISION

34.     On August 15, 2019, the Company filed the Registration Statement with the SEC. As alleged herein, the Registration Statement contained material misrepresentations and omissions of fact that render portions of the Registration Statement misleading.

35.     Designed to convince stockholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered materially misleading by the omission of information relating to the financial advisor's fairness opinion. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Nanometrics stockholders.

### Material Omissions Concerning Management's Financial Projections and the Financial Advisor's Respective Financial Analyses

36.     The Registration Statement describes the financial advisor's fairness opinion and the various valuation analyses the financial advisor performed in support of its opinion. However, the description of the financial advisor's fairness opinion and the underlying analyses omits key inputs and assumptions. Without this information, as described below, Nanometrics public stockholders are being misled as to what weight, if any, to place on the financial advisor's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Nanometrics stockholders, and its absence renders the description of Barclays's fairness opinion misleading.

37.     With respect to Barclays' Selected Comparable Company Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Barclays in the analyses.

38.     With respect to Barclays' Discounted Cash Flow Analysis for Nanometrics, the

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow, including EBITDA, depreciation and amortization, capital expenditures and changes in net working capital, and stock based compensation; (ii) the terminal values of Nanometrics; (iii) the individual inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0% and the perpetual growth rates ranging from 2.0% to 4.0%; (iv) estimated net debt; and (v) Nanometrics' fully diluted shares outstanding.

39.     Similarly, with respect to Barclays' Discounted Cash Flow Analysis for Rudolph, the Registration Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow, including EBITDA, depreciation and amortization, capital expenditures, changes in net working capital, and stock based compensation; (ii) the terminal values of Rudolph; (iii) the individual inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0% and the perpetual growth rates ranging from 2.0% to 4.0%; (iv) estimated net debt; and (v) Rudolph's fully diluted shares outstanding.

40.     Without such undisclosed information, Nanometrics stockholders cannot evaluate for themselves whether the financial analyses performed by the financial advisor was based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which financial advisor's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

41.     The omission of this information renders the statements in the "Summary of Material Financial Analyses" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

42.     As a result of the above-referenced misleading statements and omissions in the Registration Statement, Defendants violated Sections 14(a) and 20(a) of the Exchange Act.

43.     Based on the foregoing disclosure deficiencies in the Registration Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Nanometrics stockholders will suffer, absent judicial intervention, if Nanometrics' stockholders are required to

decide how to vote their shares without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Proxy Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47.     The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

48.     Here, Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) the Company's financial projections; and (ii) the valuation analyses of the financial advisor.

49.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to Nanometrics common stockholders although they could have done so without extraordinary effort.

50.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement notes that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by the financial advisors, as well as their respective fairness opinions and the assumptions made and matters considered in connection therewith.

51.     Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and Rudolph, and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review the financial advisors' analyses in connection with their receipt of the fairness opinion, question the advisors as to the derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement, and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

52.     The Individual Defendants were, at the very least, negligent in preparing and

reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

53.     Nanometrics is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

54.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and Nanometrics stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Nanometrics within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Nanometrics and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

57.     Each of the Individual Defendants was provided with, or had unlimited access to,

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  Thus, the Individual Defendants were directly involved in the creation of the Registration Statement.

59.     The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over, and did control, a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

a) declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b) preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

c) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 6, 2019

LEVI & KORSINSKY, LLP

By: /s/ *Rosanne L. Mah*
Rosanne L. Mah
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

LEVI & KORSINSKY, LLP
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
          etripodi@zlk.com

*Counsel for Plaintiff*